IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

      PLAINTIFF,

      *v.*

REAL PROPERTY LOCATED AT 3306 BAY
VIEW DRIVE, JONESBORO, GEORGIA;
2014 GMC ACADIA DENALI, VIN
1GKKRTKD8EJ138259; 2014 YAMAHA
WAVERUNNER, MODEL VX1800A-NB,
US-YAMA3116J314; 2013 YAMAHA
WAVERUNNER, MODEL SJ700, JP-
YAMH0089E313; 2013 YAMAHA
WAVERUNNER, MODEL GX1800A,
US-YAMA3940D313; 2014 YAMAHA
WAVERUNNER, MODEL FA 1800-N,
US-YAMA1141L314; AND 1964
CADILLAC DEVILLE, VIN 64F14244B

      DEFENDANTS.

Civil Action No. _____

## **VERIFIED COMPLAINT FOR FORFEITURE**

Plaintiff, United States of America, by Byung J. Pak, United States Attorney,

and Kelly Connors, Assistant United States Attorney for the Northern District of

Georgia, files this Verified Complaint for Forfeiture and alleges as follows:

## NATURE OF THE ACTION

1. This action is a civil forfeiture action *in rem* against real and personal property purchased by Mitzi Bickers.

2. As detailed below, the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes and is derived from proceeds traceable to one or more specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7), and a conspiracy to commit such offenses, including violations of 18 U.S.C. §§ 371, 666, 1343, 1349, and 1957.

3. The Defendant Properties are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in and traceable to one or more transactions or attempted transactions in violation of 18 U.S.C. § 1957.

## THE DEFENDANTS *IN REM*

4. The Defendants *In Rem* consist of:

   a. the real property located at 3306 Bay View Drive, Jonesboro, Georgia ("Defendant Real Property");

   b. a 2014 GMC Acadia Denali, bearing VIN 1GKKRTKD8EJ138259;

   c. a 2014 Yamaha WaveRunner, model VX1800A-NB, US-YAMA3116J314;

   d. a 2013 Yamaha WaveRunner, model SJ700, JP-YAMH0089E313;

    e.  a 2013 Yamaha WaveRunner, model GX1800A, US-YAMA3940D313;

    f.  a 2014 Yamaha WaveRunner, model FA 1800-N, US-YAMA1141L314; and

    g.  a 1964 Cadillac DeVille, bearing VIN 64F14244B

(referenced collectively as the "Defendant Properties").

5.   On April 5, 2018, law enforcement officers seized the GMC Acadia Denali, four Yamaha WaveRunners, and the Cadillac DeVille, pursuant to seizure warrants issued in the Northern District of Georgia.

6.   The GMC Acadia Denali, four Yamaha WaveRunners, and the Cadillac DeVille are presently located in this district in a secure storage facility.

7.   The Defendant Real Property is described as follows, under tax parcel identification number 61 075-2011-004786:

All that tract or parcel of land lying and being in Land Lot 9 of the 12th District, Henry County, Georgia, being Lot 18, Block A, of Bayview Lake Spivey Estates, and being more particularly described as follows:

Beginning at a point located on the easterly right of way of a cul-de-sac located at the end of Bay View Drive, said point being a distance of 548.50 feet southeasterly as measured along the right of way of Bay View Drive from the intersection of Bay View Drive with the right of way of Lost Valley Drive; from said point of beginning continuing thence in a southeasterly, southerly and southwesterly direction, and following along the right of way of Bay View Drive, along the arc of a curve to the right an arc distance of 80.00 feet (chord bearing South 34 degrees 23 minutes 33 seconds West and a chord length of 74.22 feet) to a point; running thence South 32 degrees 33 minutes 26 seconds

East a distance of 275 feet, more or less, to the shoreline of Lake Spivey; running thence in a northerly and northeasterly direction, and following along the shoreline of Lake Spivey, and following the meanderings thereof, a distance of 388 feet, more or less, to a point; running thence South 76 degrees 25 minutes 20 seconds West a distance of 250.00 feet, more or less, to a point and the point of beginning.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and 1355.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1395.

## FACTS SUPPORTING FORFEITURE

10. This action is brought by the United States seeking the forfeiture of property which constitutes and is derived from proceeds, and property involved in the laundering of proceeds, of a bribery scheme carried out by Mitzi Bickers ("Bickers"), who is a former City of Atlanta employee.

11. As set forth in more detail below, from in or about 2010 and continuing through 2015, Bickers and others conspired together and executed a bribery scheme in which individuals and their companies paid Bickers in exchange for Bickers's agreement to represent their companies and obtain City of Atlanta contracts for their companies.

**Bickers's City of Atlanta Employment**

4

12. From in or about February 2010 to on or about May 22, 2013, Bickers served as the Director of Human Services for the City of Atlanta.

13. During that time, Bickers received a salary from the City of Atlanta.

14. As a City of Atlanta employee, Bickers was required to comply with the City of Atlanta's Code of Ethics.

## City of Atlanta Code of Ethics

15. According to the City of Atlanta's Code of Ethics § 2-812, no official or employee may participate directly or indirectly through decision making, approval, recommendation or rendering advice in any matter pertaining to any contract or subcontract and any solicitation or proposal or seek to influence the votes or decisions of others with respect thereto when the official or employee knows or with reasonable investigation should know that there is a financial or personal interest possessed by the official or employee or a business in which the person serves as "an officer, director, stockholder, . . . partner or employee."

16. According to the City of Atlanta's Code of Ethics § 2-818, "no official or employee shall solicit or accept anything of value, in any form whatsoever, calculated to influence a vote, decision or the exercise of official authority in any manner involving the city."

17. According to the City of Atlanta's Code of Ethics § 2-814(a)(1), certain City of Atlanta officials and employees must disclose all "positions of employment held by the official or employee in any business . . . for all or any portion of the year, including a description of the type of business and the existence and nature of any business done by the employer entity with the city."

18. City of Atlanta's Code of Ethics § 2-814(a)(2), further requires that these officials and employees disclose "[e]ach and every source of income from any business received by such official or employee in excess of $5,000 derived from any single source in the preceding calendar year."

19. The Department of Procurement is responsible for facilitating the procurement of commodities and services for the City of Atlanta.

20. The mission of the Department of Procurement "is to model best practices in public purchasing while promoting equity, fairness, and economic inclusion."

21. According to the City of Atlanta's Procurement Code § 2-1482, any City of Atlanta officer or employee who has a direct or indirect financial interest in any procurement matter, other than by a competitive sealed bid, must disclose the nature of the financial interest to the City of Atlanta's Chief Procurement Officer.

6

22. According to the City of Atlanta's Procurement Code § 2-1484, it is unethical for any person to offer, give or agree to give any employee or former employee or for any employee or former employee to solicit, demand, accept or agree to accept from another person a gratuity or an offer of employment in connection with any decision, approval, disapproval, recommendation, influencing the content of any specification or procurement standard, rendering of advice, or other matter pertaining to any contract or subcontract or to any solicitation or proposal therefor.

23.  According to the City of Atlanta's Procurement Code § 2-1485, it is unethical for a person to be retained or to retain a person to solicit or secure a city contract upon an agreement or understanding for a commission, percentage, brokerage or contingent fee.

24. According to the City of Atlanta's Procurement Code § 2-1487, it is unethical for any employee or former employee willfully to use confidential information for actual or anticipated personal gain or for the actual or anticipated personal gain of any other person.

**Corporate Entities Related to Bickers**

25. Since in or about May 2010, Bickers has been the Chief Executive Officer, Chief Financial Officer, and Registered Agent for The Bickers Group, Inc.

7

26. The Bickers Group, Inc. is a for-profit corporation that focuses on political and campaign consulting work.

27. From 2006 to 2010, Bickers was the Chief Financial Officer and Registered Agent of Chateau Land Company, Inc.

28. Also, in or about 2012, Bickers began to work for Pirouette Companies, a political consulting and marketing company.

## City of Atlanta Financial Disclosure Forms

29. During her employment with the City of Atlanta, Bickers filed multiple false City of Atlanta Financial Disclosure Forms under penalty of perjury via the Internet.

30. During her employment with the city of Atlanta, Bickers received payments of more than $5,000 from sources other than the City of Atlanta that she failed to disclose, in violation of City of Atlanta's Code of Ethics § 2-814(a)(l).

31. In 2012 and 2013, Bickers completed and electronically signed a City Financial Disclosure Statement under penalty of perjury.

32. In each statement, Bickers attested that she did not have additional employment, that she had not received more than $5,000 in annual income from any other source of employment, and that she had not been compensated

for appearing on behalf of any person, client, or private interest before any city agency.

33. However, during the time periods covered by those City Financial Disclosure Statements in 2012 and 2013, Bickers in fact received more than $5,000 from outside sources, including from the Bickers Group and Pirouette Companies.

34. As a result of Bickers's false and fraudulent representations on the City Financial Disclosure Statement, the City of Atlanta transmitted electronic wire communications associated with salary payments to Bickers.

35. For example, on February 22, 2013, the City of Atlanta deposited $600.00 and $829.64 into two bank accounts controlled by Bickers.

36. In early 2013, Bickers's financial ties to the Pirouette Companies was publically exposed.

37. Then, on or about March 19, 2013, Bickers re-submitted and electronically signed another City Financial Disclosure Statement under penalty of perjury.

38. That time, Bickers stated that she had been self-employed by Pirouette Companies and Emmanuel Baptist Church and that she had received more than $5,000 in annual income from both of those sources.

**Bribe Payments to Bickers**

39. In addition to failing to disclose her outside employment to the City of Atlanta, Bickers solicited and accepted bribery payments from Elvin R. Mitchell, Jr. ("Mitchell"), Charles P. Richards, Jr. ("Richards"), and their construction companies.

40. Mitchell was the owner and principal of: E.R. Mitchell Company; Cascade Building System, LLC; E.R. Mitchell Group, Inc.; and EC & WT Construction Company, Inc., d/b/a E.R. Mitchell Construction Co.

41. Richards was the owner and principal of C.P. Richards Construction Co., Inc. and C.P. Richards & Associates, Inc.

42. Beginning in or about 2010, while Bickers was employed by the City of Atlanta, Mitchell and Richards agreed to pay bribes to Bickers to secure City of Atlanta contracts for their businesses.

43. In exchange for the bribery payments and the promise of bribery payments, Bickers agreed to represent Mitchell, Richards, and their companies on matters relating to City of Atlanta contracting—notwithstanding that Bickers was prohibited from doing so as a City of Atlanta employee.

44. Bickers also provided sensitive contracting information to Mitchell and Richards that assisted them in submitting contract bids.

10

45. After leaving employment with the City of Atlanta, Bickers continued to enrich herself and others by soliciting and accepting payments from Mitchell, Richards, and their companies.

46. From in or about 2010 to in or about 2015, Mitchell's and Richards's companies actively sought and received contracts with the City of Atlanta, including contracts relating to emergency snow and debris removal, sidewalk maintenance and repair, and emergency bridge reconstruction.

47. During that period, the City of Atlanta awarded and paid Mitchell's and Richards's businesses approximately $17 million for government contracts they secured.

48. From approximately 2010 to 2015, Mitchell, Richards, and their companies paid over $2,000,000 in bribe payments to Bickers, the Bickers Group, Chateau Land Company, and the Pirouette Companies in an attempt to get City of Atlanta contracts.

**Specific Examples of Bribe Payments**

49. From approximately January to December 2010, Mitchell withdrew approximately $111,000 in cash.

50. From approximately January to December 2010, approximately $94,000 in cash was deposited into accounts Bickers owned or controlled.

51. On or about January 26, 2011, the City of Atlanta paid Mitchell through Cascade Building Systems approximately $1.2 million for contract work.

52. From approximately January 27 to on or about February 1, 2011, Mitchell withdrew approximately $390,000 from accounts he owned or controlled, mostly in cash.

53. From approximately January 28 to on or about February 1, 2011, approximately $93,000 in cash was deposited into accounts owned or controlled by Bickers.

54. Those cash deposits were broken up into approximately 15 transactions of $10,000 or less and spread across approximately 10 bank accounts owned or controlled by Bickers.

55. Also, from on or about February 3 through in or about March 2011, approximately $208,000 in cash was deposited into an account as earnest money for the purchase of the Defendant Real Property.

56. In or about January 2014, the City of Atlanta paid C.P. Richards Construction approximately $162,000 for work the company performed.

12

57. Then, on or about January 15, 2014, C.P. Richards Construction wrote a check to Pirouette Companies for $15,000.

58. From approximately February 28 to March 5, 2014, the City of Atlanta made a series of payments to Mitchell's company, Cascade Building Systems, totaling $3,279,567 for services related to a 2014 snowstorm and debris removal.

59. On or about March 7, 2014, Mitchell wrote a $50,000 check from the Cascade Building Systems account to Bickers that was deposited into Bickers's personal account.

60. Also, on or about March 7, 2014, Mitchell wrote $150,000 check from his Cascade Building Systems bank account that was deposited into an account owned or controlled by Pirouette Companies.

61. Then, on or about March 12, 2014, Mitchell wrote a $44,000 check to Bickers that was deposited in her personal account.

62. Also, on or about March 12, 2014, Mitchell withdrew $100,000 in cash.

63. The same day, $100,000 in cash was deposited into an account owned or controlled by Pirouette Companies.

64. On or about March 26, 2014, Mitchell wrote a $100,000 check to the Bickers Group and a $50,000 check to Pirouette Companies.

65. Both checks were deposited on March 26, 2014.

13

66. On or about April 1, 2014, Mitchell withdrew $100,000 in cash from a bank account he owned or controlled.

67. On the same day, $100,000 was deposited into an account owned or controlled by Pirouette Companies.

68. On or about April 1, 2014, Mitchell also wrote a $110,000 check to the Bickers Group.

69. The check was immediately deposited into the Bickers Group business account.

70. On or about April 1, 2014, Mitchell also wrote a $30,000 check to Bickers.

71. The check was immediately deposited into Bickers' personal account.

## Purchases of the Vehicles and Waverunners

72. Between on or about April 30 and May 9, 2014, Cascade Building Systems paid the Bickers Group approximately $85,700.

73. Then, on or about May 9, 2014, Bickers purchased a 2014 GMC Acadia Denali by writing a check for approximately $46,582.40 drawn from the Bickers Group's Capitol City bank account.

74. On or about May 23, 2014, Cascade Building Systems paid the Bickers Group approximately $21,000.

14

75. Then, on or about May 24, 2014, Bickers purchased a 2014 Yamaha WaveRunner (model VX1800A-NB) and a 2013 Yamaha WaveRunner (model SJ700) by writing a check for approximately $21,091.88 drawn from the Bickers Group Capitol City bank account.

76. Between on or about June 30 and July 3, 2014, Cascade Building Systems paid the Bickers Group approximately $22,000.

77. On or about July 3, 2014, Bickers purchased a 2013 Yamaha WaveRunner (model GX1800A) and a 2014 Yamaha WaveRunner (FA 1800-N) for approximately $24,726.10 with a Bickers Group debit or credit card.

78. Between on or about October 31, and November 5, 2014, Cascade Building Systems paid Pirouette Companies approximately $41,500.

79. On or about November 13, 2014, Bickers purchased a 1964 Cadillac Deville with a check drawn from Pirouette Co, LLC bank account at SunTrust for $25,000.00.

## Purchase of the Defendant Real Property

80. On or about June 8, 2011, the City of Atlanta paid Mitchell, through Cascade Building Systems, $99,761.75.

81. On or about June 23, 2011, Mitchell withdrew $100,000 from a bank account he controlled.

82. On or about June 20, 2011, the City of Atlanta paid Richards, through C.P. Richards Construction, $86,500.

83. On or about June 27, 2011, the City of Atlanta paid Richards, through C.P. Richards Construction, $46,722.84.

84. On or about June 27, 2011, Richards initiated two wire transfers from C.P. Richards Construction Inc.'s business account to Bickers' personal bank account in the amounts of $50,000 and $3,000.

85. Also on June 27, 2011, a cash deposit totaling $85,000 was made into the Bickers Group's business account.

86. In addition, on or about June 27, 2011, five cash deposits totaling $47,800 were made into Bickers' personal bank accounts in the amounts of $9,800; $9,500; $9,500; $9,500; and $9,500.

87. On or about June 27, 2011, Bickers initiated a wire transfer from the Bickers Group bank account in the amount of $104,000 to a real estate closing attorney.

88. Also, on or about June 27, 2011, Bickers initiated a wire transfer from a personal bank account in the amount of $85,000 to the same real estate closing attorney.

89. On or about June 28, 2011, a cash deposit of $20,000 was made into Bickers' personal bank account.

90. On or about June 28, 2011, Bickers initiated a wire transfer from a personal account in the amount of $114,000 to the same real estate closing attorney.

91. On or about June 28, 2011, Bickers purchased the Defendant Real Property.

92. In addition to the wires sent to the closing attorney, Bickers used the $208,000 in earnest money, as well as other funds, to purchase the Defendant Real Property.

**Indictment Including Forfeiture Provision**

93. On March 27, 2018, a grand jury seated in the Northern District of Georgia returned an Indictment charging Bickers with: two counts of conspiracy to commit bribery (in violation of 18 U.S.C. §§ 371 and 666(a)); three counts of money laundering (in violation of 18 U.S.C. § 1957) relating to the purchases of the 2014 GMC Acadia Denali and four WaveRunners; four counts of wire fraud (in violation of 18 U.S.C. § 1343) relating to Bickers' false City of Atlanta Financial Disclosure Forms; one count of tampering with a witness or informant (in violation of 18 U.S.C. § 1512(b)); and one count of filing false tax returns (in violation of 26 U.S.C. § 7206). *United States v. Bickers*, Crim. Action No. 18-CR-098 (N.D. Ga. Mar. 27, 2018).

94. In addition to the charges, the Indictment included a Forfeiture Provision listing the Defendant Properties as subject to forfeiture.

## SUMMARY

95. When viewed collectively, the foregoing information supports a reasonable belief that the United States will be able to prove at trial that the Defendant Properties are subject to forfeiture to the United States because Bickers conspired with others and committed numerous criminal violations, and the Defendant Properties are proceeds of those violations or were involved in the laundering of proceeds of those violations.

WHEREFORE, Plaintiff prays that:

1). The Court forfeit the Defendant Properties to the United States of America;

2). The Court award the Plaintiff the costs of this action; and

3). The Court grant such other relief as the Court deems just and proper under

the facts and circumstances of this case.

This 21ᵗʰ day of August, 2018.

Respectfully submitted,

BYUNG J. PAK
  *United States Attorney*
  *600 U.S. Courthouse*
  *75 Ted Turner Drive SW*
  *Atlanta, GA 30303*
  *(404) 581-6000   fax (404) 581-6181*

/s/KELLY CONNORS
  *Assistant United States Attorney*
  Georgia Bar No.    504787
  Kelly.Connors@usdoj.gov

## Certificate of Compliance

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing complaint has been prepared using Book Antiqua, 13 point font.

/s/ KELLY CONNORS
*Assistant United States Attorney*

20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

       PLAINTIFF,

     *v.*

REAL PROPERTY LOCATED AT 3306 BAY
VIEW DRIVE, JONESBORO, GEORGIA;
2014 GMC ACADIA DENALI, VIN
1GKKRTKD8EJ138259; 2014 YAMAHA
WAVERUNNER, MODEL VX1800A-NB,
US-YAMA3116J314; 2013 YAMAHA
WAVERUNNER, MODEL SJ700, JP-
YAMH0089E313; 2013 YAMAHA
WAVERUNNER, MODEL GX1800A,
US-YAMA3940D313; 2014 YAMAHA
WAVERUNNER, MODEL FA 1800-N,
US-YAMA1141L314; AND 1964
CADILLAC DEVILLE, VIN 64F14244B

       DEFENDANTS.

Civil Action No. _____

## VERIFICATION OF COMPLAINT FOR FORFEITURE

    I, Daniel E. Oak, a Task Force Officer with the Federal Bureau of
Investigation, read the Complaint for Forfeiture in this action and state that its
contents are true and correct to the best of my knowledge and belief based upon
my personal knowledge of the case and upon information obtained from other law
enforcement personnel.

21

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 27th day of August, 2018.

DANIEL E. OAK
*Task Force Officer*
*Federal Bureau of Investigation*

22